NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BRAD D. STERN, a single individual,
*Plaintiff/Appellant/Cross-Appellee*,

*v.*

STEVEN J. STERN and JAMIE R. STERN, husband and wife; SENIOR
ADVISORY GROUP OF AMERICA, INC., an Arizona corporation,
*Defendants/Appellees/Cross-Appellants*.

No. 1 CA-CV 14-0737
FILED 7-12-2016

Appeal from the Superior Court in Maricopa County
No. CV 2012-014573
The Honorable John Christian Rea, Judge

**AFFIRMED IN PART AS AMENDED; VACATED IN PART**

COUNSEL

Law Office of Scott E. Boehm, PC, Phoenix
By Scott E. Boehm
*Co-Counsel for Plaintiff/Appellant/Cross-Appellee*

Tiffany & Bosco, PA, Phoenix
By Robert A. Royal, Aaron T. Lloyd
*Co-Counsel for Plaintiff/Appellant/Cross-Appellee*

Gallagher & Kennedy, PA, Phoenix
By Michael R. Ross, Cober Plucker
*Counsel for Defendants/Appellees/Cross-Appellants*

---

## MEMORANDUM DECISION

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Kenton D. Jones joined.

---

**O R O Z C O**, Judge:

¶1        Brad Stern appeals from the judgment entered against him on Counts 1-6 of his verified complaint and the trial court's award of $579,461.59 in attorney fees to Steven Stern, as well as expenses to be incurred in future enforcement and collection of the judgment.  For the following reasons, we affirm the judgment and the award of $579,461.59 in attorney fees, but amend the judgment to reflect its disposition of only Counts 1-5 of the verified complaint, and strike the award of attorney fees for enforcement and collection costs.

### FACTS AND PROCEDURAL HISTORY

¶2        Brad and Steven are brothers who conducted business together.  In September 2012, Brad sued Steven and their business, Senior Advisory Group of America, Inc. (SAG), alleging numerous claims related to Brad's ouster from SAG.[1]  In his verified complaint, Brad alleged that he and Steven agreed to go into business together in 2001 as partners, and that in 2003, he and Steven "incorporate[d] their partnership business into an entity called SAG[,]" such that SAG was the corporate "alter ego or instrumentality by which Brad and Steven would conduct their partnership activities."[2]  Brad further alleged that "[a]s part of the Partnership Agreement, Brad and Steven agreed . . . that they would share the profits and losses and management of the partnership on an equal basis[,]" and that the brothers were paid equal salaries, monthly bonuses and benefits.  Finally, Brad alleged that in 2012, Steven ousted him from the partnership,

---

[1]        Brad also named Jamie R. Stern, Steven's wife, as a Defendant.

[2]        Brad asserted additional claims unrelated to the alleged partnership, which are not a part of this appeal.

giving rise to six partnership-related claims.[3]  Steven denied the existence of the alleged partnership.

¶3        Because Brad's claims for relief depended on the existence of the alleged partnership, the parties stipulated to bifurcate the trial and first try the partnership issue.  Specifically, the parties stipulated in May 2013 "that the Court may first conduct a trial on the threshold question of whether an enforceable, oral partnership exists between [Brad and Steven] and, if so, what are the terms of that oral partnership[.]"  The trial court then ordered a jury trial "on the threshold question of whether an enforceable, oral partnership exists between [Brad and Steven] and, if so, what are the terms of that oral partnership."

¶4        Later, in the November 2013 joint pretrial statement, the parties listed the contested issues of fact and law as: (1) "[w]hether Brad and Steven are partners under Arizona law[,]" (2) "[w]hether Brad and Steven entered into an oral partnership agreement[,]" and (3) "[i]f Brad and Steven are partners, what are the terms of their oral partnership agreement?"

¶5        As the trial approached, the parties and the court discussed the issues to be tried at the March 2014 trial management conference:

> THE COURT:  . . . Oh, the issues . . . we bifurcated it.  We're doing the partnership.  Part I of the forms of verdict, obviously the jury is going to have to say was there a partnership, yes or no?
>
> I mean the Plaintiff's position is there was a partnership where we were –- that we were equal owners.  I mean it's not 30/70, it's not –- I mean that's the Plaintiff's position is just we were just partners and equal owners, right?
>
> [Brad's Attorney]:   Right, that's correct.
>
> THE COURT:       Now, one of the proposed forms of verdict and one of the things you've got here in your contested issues is the fact if they were partners, what are the terms of their agreement?  I mean, how do you envision the jury answering that verdict form?  Other than half and half ownership, what other terms –-

---

[3]        Before trial, Brad withdrew Count 6, Application for Receivership, without prejudice, which the trial court approved.

[Brad's Attorney]:   It's not really disputed, it's either 50/50 –- your point is it's either 50/50 or nothing.

THE COURT:        Well I think that's your position.

[Brad's Attorney]:   That's right.

THE COURT:        I think that's –-

[Brad's Attorney]:   That's exactly right.

THE COURT:        Okay. And so in terms of terms –- other than that what terms do we –- what do we need to decide in this case?  I mean what I would envision is if we decide –- if the jury says yes, there was a partnership, and it was 50/50, then we go to the next step of saying was there a breach of the partnership agreement.   And in that trial we introduce evidence of the terms and the cause of the termination and whether that was within the scope of the term.

[Steven's Attorney]: Your Honor, I think if the position is –- and I think that's right.  It's consistent with the case and the way it's progressed is they're either equal partners or they're not.

THE COURT:        Yes.

[Steven's Attorney]: I think that's the inquiry that we've put into a special verdict form.

[Brad's Attorney]:   Right.

THE COURT:        Okay.

¶6        During jury selection and prior to voir dire, the trial court provided the following overview of the case to the jury pool:

Brad . . . claims that he and Steven formed an oral partnership agreement in 2001 and that the oral partnership continued until 2012.  Brad alleges that he and Steven agreed to operate their partnership through a corporation called [SAG] . . . and that they are equal partners in [SAG].  Steven denied ever forming an oral partnership with Brad.  Steven asserts that he hired Brad into an existing incorporated business, that the business is, and always was, a corporation that Steven owned

4

and controlled and that he and Brad were never equal partners in [SAG].

¶7 During trial on March 27, the parties discussed the jury instructions. Brad's proposed jury instruction for the partnership claim stated, "[i]f you find that the facts, circumstances, actions, conduct, and intent of Brad and Steven Stern proved by a preponderance of evidence that a partnership existed between the two, then your verdict must be for Brad." Steven's proposed jury instruction for the partnership claim stated, "Brad claims that he and Steven agreed to equal ownership of [SAG]. To establish that a partnership on these terms existed, Brad must prove by a preponderance of the evidence that Brad and Steven's conduct and statements show that they both agreed to equally share in the ownership of [SAG]." Steven made clear that Brad's claim was for an equal partnership. Brad then confirmed that Steven's recitation was "absolutely correct" and that "we [pled in] this case that they were 50/50 partners." Brad's attorney continued:

> [Brad's attorney]: . . . In the joint pretrial, we stated that the first question is, of course, is there or is there not oral partnership. The second question discussed what are the terms and conditions . . . of that partnership. So our evidence has been that . . . there was a partnership, and the terms and conditions are that it was 50/50.
>
> THE COURT: Equal co-owners.
>
> [Brad's Attorney]: Equal co-owners.
>
> THE COURT: Okay.
>
> [Brad's Attorney]: You know it. But I would just note that, you know, that a [sic] equal partnership isn't what the statute says. It's a fact driven statement that they've added to the instructions. . . . [A]s we presented our case, and will continue to present our case, we are going to show that the terms of the partnership were equal, it was 50/50. Brad said that many times. You know, during the examination and in pretrial. . . . I understand the court's thinking about equal co-owners; equal isn't in the statute, it's certainly part of the evidence[.]"

. . .

5

[Steven's attorney]: But at the end of the day the jury also has to be told, whether it's in the special verdict form, or within the other aspects of the instruction; they got to be told that the claims are 50/50 because that's the claim.

And I guess I need to understand, for [the] sake of clarity for today and tomorrow morning, closing argument, is the claim now -- are they now asking the jury to find something less than a 50/50 partnership. We got to -- I need a --

THE COURT:      I don't -- I hear that they are not.

[Brad's attorney's]: No.

THE COURT:      Co-owner. That co-ownership --

[Brad's attorney]:    Okay.

THE COURT:      -- means the 50/50 co-ownership.

[Brad's attorney]:    Fair enough.

¶8      At no point during the March 27 discussion did Brad clearly object to the jury instruction. In fact, on March 28, the following exchange took place:

[Steven's attorney]: We had a discussion yesterday about what needs to be proved about the partnership, whether they have to prove by a preponderance of the evidence that a partnership existed or whether Brad has to prove that an equal 50/50 partnership existed. And . . . we need to make sure the jury understands that they have to prove by a preponderance of the evidence that an equal 50/50 partnership existed, and I think it makes sense to include that language.

THE COURT:      Yeah, that's the claim.

[Brad's attorney]: That is the claim, Your Honor. It's somewhat redundant because it does talk about equal 50/50 partners on your instruction on Page 4.

THE COURT:      On Page 7, I'll just change both paragraphs to say that proved by a preponderance of the

evidence that an equal partnership existed between the two. I mean, that is the claim and that's consistent with the other.

¶9        The Court and the parties then discussed the proposed forms of verdict. Brad's proposed verdict form stated "We, the Jury, . . . do find in favor of Plaintiff Brad Stern that Brad Stern and Steven Stern are partners." Steven's proposed verdict form stated, "We, the Jury, . . . do find in favor of Defendant Steven Stern that Brad Stern and Steven Stern are not partners." The Court asked:

THE COURT:        Have you seen the proposed form of verdict? I think it's one simple, "Do you find there was a partnership?" "Yes" or "no."

. . .

[Steven's attorney]: I thought the equal ownership of the business was the foundation of your claim[.]

. . .

THE COURT:        "Agreed to an equal partnership."

[Brad's attorney]:    Yeah.

[Brad's attorney]:    That's fine.

. . .

THE COURT:  How about "an equal partnership that did business as [SAG]" -- "that did business through [SAG]."

[Brad's attorney]:    "Operated through [SAG]."

THE COURT:        "Equal partnership that operated through [SAG]." All right.

¶10        After closing arguments, the trial court read the jury instructions, and the jury retired to deliberate. Eventually, the jury sent a note to the court that read: "[w]e, the jury, unanimously agree that Brad and Steven Stern agreed to a partnership that operated through SAG of America, Inc. However, we cannot agree that it was an equal partnership. Advice?" The trial court then discussed the note with both parties. Brad's attorney stated:

7

The question, including in the joint pretrial, is there or is there not a partnership, you know. So we got an answer to that and, as we said on the record plenty of times, the law in Arizona doesn't require anything in addition. You don't add you must prove equal in order to get a partnership; you must prove 50/50 to get a partnership. And the terms and conditions of the partnership are something else. But, you know, we've been down that road and I've made my record.

The parties agreed to call in the jury to clarify the note. The judge asked the jury a number of questions about the note, and sent them back to continue their deliberations. Thereafter, the jury returned a verdict in favor of Steven, finding that Brad did not prove that he and Steven "agreed to an equal partnership that operated through" SAG. The trial court then entered a Rule 54(b) judgment on the jury's verdict.

**¶11**  After trial, Brad filed a motion to amend the complaint to conform to the evidence. Specifically, Brad sought to add a claim for declaratory judgment, as he explained, because, based on the jury's note, "evidence at trial showed that Brad and Steven [were] partners." Steven opposed the motion, arguing, inter alia, that the parties did not consent to try the claim outside the pleadings and that amending the complaint would cause him prejudice. The trial court denied Brad's motion, reasoning that "[t]he claim of a partnership agreement other than 50/50 was not pled, disclosed, or tried by express or implied consent."

**¶12**  Brad timely appealed and Steven timely cross-appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A and -2101.A (West 2016).[4]

## DISCUSSION

### I.  Jury instructions

**¶13**  Brad argues that the jury instructions constituted error for multiple reasons, including: (1) the jury instructions misapplied Arizona partnership law by requiring that Brad prove an equal partnership; (2) the jury instructions did not mirror the parties' pretrial stipulations; and (3) because the jury instructions required that Brad prove an equal partnership, "the trial court necessarily found Brad had waived his rights to recover" for

---

[4]  We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

any lesser, unequal interest in the partnership. Generally, we review jury instructions for an abuse of discretion. *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cty.*, 222 Ariz. 515, 533, ¶ 50 (App. 2009). However, "we review whether a jury instruction correctly states the law de novo." *Id.*

¶14        Under Rule 51(a), Arizona Rules of Civil Procedure, "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." A general objection to a given instruction is insufficient under Rule 51(a). *Long v. Corvo*, 131 Ariz. 216, 217 (App. 1981). An objection that an instruction does not state the law is a general objection and thus insufficient. *Spillios v. Green*, 137 Ariz. 443, 446 (App. 1983). Failure to object with particularity to a jury instruction results in waiver of the objection on appeal. *Duran v. Safeway Stores, Inc.*, 151 Ariz. 233, 234 (App. 1986); *Long*, 131 Ariz. at 217.

¶15        Brad does not refer us to the portion of the transcript in which he objected to the instruction he challenges on appeal, and our review of the record reflects that Brad did not object to the jury instructions with particularity. To the contrary, both parties agreed to the jury instructions after lengthy discussions during which both parties provided input. Brad agreed to the jury instruction that his claim was for an equal partnership, that his claim required proof of an equal partnership, and that the verdict form should reflect that the parties "agreed to an equal partnership that operated through [SAG]." Although Brad argues that his counsel made the point that "equal partnership [is not] what the statute says," under the circumstances we cannot construe that to be an objection to the jury instruction. At no point did Brad argue the jury should be instructed that it could find anything other than an "equal" partnership. When the court took up the matter again the following morning, Brad offered no objection, and indeed endorsed, a form of verdict that, consistent with the instruction, required him to prove an "equal partnership." *See Spillios*, 137 Ariz. at 446 ("An objection on the ground that an instruction . . . does not state the law is a general objection and is insufficient.").

¶16        Because Brad did not object to the jury instructions, errors resulting from the jury instructions, if any, are waived for purposes of this appeal. *See* Ariz. R. Civ. P. 51(a); *Duran*, 151 Ariz. at 234 (appellant waived objection to a jury instruction by failing to object as required by Rule 51(a)); *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 419-20 (1988) (deeming waived appellant's argument that jury instruction was error because appellant failed to object to the final instructions at trial); *Rodriguez*

*v. Schlittenhart*, 161 Ariz. 609, 616 (App. 1989) (waiving objection to jury instruction when appellant does not object at trial).

## II. The Jury's Note

¶17  During deliberations, the jury submitted a note to the trial court suggesting it had found that Brad and Steven were partners, but not equal partners.  On appeal, Brad contends for the first time, that the jury's note constituted a legal verdict under the Arizona Rules of Civil Procedure. We review the application of court rules de novo. *Cranmer v. State*, 204 Ariz. 299, 301, ¶ 8 (App. 2003).

¶18  Under the Arizona Rules of Civil Procedure, "[w]hen the eight jurors unanimously agree upon a verdict, the verdict shall be signed by the foreman and returned into court." Ariz. R. Civ. P. 49(a).  "No special form of verdict is required.  Where there has been substantial compliance with the law in rendering a verdict, the judgment shall be rendered and entered thereon notwithstanding a defect in the form of the verdict." *Id.* at 49(e).  However, "[i]f the verdict is not responsive to the issue submitted to the jury, the court shall call the jurors' attention thereto, and send them back for further deliberation." *Id.* at 49(c).

¶19  Brad did not move the trial court to enter judgment based on the jury's note at the time the jury submitted the note.  On appeal, Brad cites no authority, and we find none, for the proposition that a jury's question might constitute a verdict, or supporting the proposition that the trial court was required to sua sponte enter judgment for Brad on the partnership issue based solely on the jury's note.  Even assuming that the jury's note qualified as a verdict under Rule 49(a), the verdict would have been unresponsive under Rule 49(c).  The issue submitted to the jury was whether Brad and Steven "agreed to an equal partnership."  Because the jury's note stated "we can not [sic] agree that it was an equal partnership[,]" the note was unresponsive to the issue of equality.  Therefore, again assuming that the jury's note might qualify as a verdict, the trial court properly sent the jury back for further deliberation rather than entering judgment. *See* Ariz. R. Civ. P. 49(c); *see also Fornara v. Wolpe*, 26 Ariz. 383, 389-90 (1924) (stating that if a jury "decides issues not submitted to it, its action to that extent is without force or effect").  Accordingly, we find no error.

## III. Motion to Amend

¶20  After trial, Brad moved to amend his complaint to include a claim for declaratory judgment—based on the jury's note—regarding the

existence of a partnership. After briefing and oral argument, the trial court denied the motion, reasoning that "[t]he claim of a partnership agreement other than 50/50 was not pled, disclosed, or tried by express or implied consent." We review the trial court's denial of Brad's motion for an abuse of discretion. *See Parker v. City of Tucson*, 233 Ariz. 422, 439, ¶ 51 (2013).

**¶21** Under Rule 15(b), Arizona Rules of Civil Procedure,

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time . . . .

Generally, courts liberally permit amendments of the pleadings to conform to the evidence. *Bujanda v. Montgomery Ward & Co., Inc.*, 125 Ariz. 314, 316 (App. 1980). However, it is proper to refuse an amendment if the amendment would cause prejudice. *See id.*; *Eng v. Stein*, 123 Ariz. 343, 347 (1979).

**¶22** The trial court did not abuse its discretion when it denied Brad's motion, because an unequal partnership claim was not "tried by express or implied consent of the parties." *See* Ariz. R. Civ. P. 15(b). Steven did not expressly consent to try an unequal partnership claim. Steven's consent also cannot be implied because the evidence Brad relies on to support his amended claim is relevant to his claim within the pleadings. *See Bujanda*, 125 Ariz. at 316 (consent cannot be implied "by admission without objection of evidence relevant to an issue within the pleadings"); *see also SWC Baseline & Crismon Inv'rs, L.L.C. v. Augusta Ranch Ltd. P'ship*, 228 Ariz. 271, 290-91, ¶ 82 (App. 2011). Furthermore, amending the complaint would cause prejudice to Steven, given the extensive discussions pre-trial and mid-trial about the proper way to instruct the jury and the form of judgment. *See Bujanda*, 125 Ariz. at 317 (finding prejudice when a requested amendment would have changed the theory of the case).

**¶23** Because we affirm the trial court's denial of Brad's motion to amend the complaint, we do not address his interrelated arguments for declaratory judgment and equitable relief.

## IV. Attorney Fees and Enforcement Costs

**¶24** In its judgment, the trial court awarded Steven $579,461.59 in attorney fees pursuant to A.R.S. § 12-341.01. In addition, the trial court

ordered that "Defendants are entitled to their attorney[] fees and costs incurred in enforcement and collection of this judgment, in an amount to be set forth in subsequently filed affidavits."

**¶25**      The trial court has "broad discretion" to award attorney fees under A.R.S. § 12-341.01. *Associated Indemn. Corp. v. Warner*, 143 Ariz. 567, 570 (1985). Determining a prevailing party for the purpose of attorney fees is also within the discretion of the trial court, and will not be disturbed if it is supported by any reasonable basis. *Berry v. 352 E. Va., L.L.C.*, 228 Ariz. 9, 13, ¶ 21 (App. 2011). We will not disturb an award of attorney fees absent an abuse of discretion. *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 261, ¶ 27 (App. 1998).

**¶26**      Brad also argues that there is no legal basis for awarding Steven attorney fees and costs "incurred in enforcement and collection of [the] judgment, in an amount to be set forth in subsequently filed affidavits." We agree that the trial court abused its discretion. Because the amount of attorney fees and costs incurred in enforcement and collection of the judgment is to be set forth in subsequently filed affidavits, the amount of the award cannot yet be known or reviewed. We therefore strike this provision from the judgment.

## V.      Steven's Cross-Appeal

**¶27**      Because we affirm the judgment entered on the jury's verdict, we do not address Steven's cross-appeal. *See Catalina Foothills Unified Sch. Dist. No. 16 v. La Paloma Prop. Owners Ass'n, Inc.*, 238 Ariz. 510, 519 n.8, ¶ 37 (App. 2015) (declining to address cross-appeal when affirming judgment on jury's verdict); *Best Choice Fund, L.L.C. v. Low & Childers, P.C.*, 228 Ariz. 502, 510 n.6, ¶ 23 (App. 2011) (deeming a cross-appeal moot when affirming judgment for the reasons underlying the trial court's ruling).

## CONCLUSION

**¶28**      For the forgoing reasons, we affirm the judgment on the jury's verdict and the award of $579,461.59 in attorney fees to Steven. We vacate the award of Steven's future attorney fees and costs incurred in enforcement and collection of the judgment. In addition, in light of Brad's

withdrawal of Count 6 of his verified complaint and the subsequent minute entry ordering that withdrawal, we amend the judgment to reflect its disposition of only Counts 1-5 of Brad's verified complaint. Finally, in our discretion, we deny Steven his attorney fees on appeal.



Ruth A. Willingham · Clerk of the Court
FILED: AA